IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Gary L. Wise,<br>aka Gary Legrande Wise,<br><br>                Plaintiff,<br><br>vs.<br><br>Administrator Joey Norris,<br>Doctor Wilner, and<br>Head Nurse Nancy Truelock,<br><br>                Defendants. | Civil Action No. 6:10-1543-RMG-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on defendant Dr. Wilner's motion to dismiss (doc. 35), defendants Administrator Norris and Nurse Truelock's[1] motion for summary judgment (doc. 58), and the plaintiff's motion for summary judgment (doc. 64). The plaintiff, a former state prisoner proceeding *pro se*, filed his complaint seeking relief pursuant to Title 42, United States Code, Section 1983, alleging the defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

## PROCEDURAL HISTORY

In addition to his surviving Eighth Amendment claim, the plaintiff's complaint also alleged false imprisonment claims against the State of South Carolina, the Florence County Detention Center, Judge Thomas Russo, and attorney Jim Bogle, and also sought

---

[1] This defendant identifies herself as Nancy G. Truluck. The Clerk of Court is directed to change the caption of the case to reflect the correct spelling, and this defendant will be referred to hereinafter as "Nurse Truluck."

injunctive relief. On July 27, 2010, the undersigned filed a Report of Magistrate Judge recommending that the false imprisonment claims be dismissed and that the request for injunctive relief be denied (doc. 15). By Order dated September 8, 2010, the Honorable Richard M. Gergel, United States District Judge, adopted the recommendation, dismissing the false imprisonment claims as to the State of South Carolina, the Florence County Detention Center, Judge Thomas Russo, and attorney Jim Bogle, and further denying injunctive relief (doc. 32). Accordingly, only the medical indifference claim survives as to defendants Administrator Norris, Dr. Wilner, and Nurse Truluck.

On September 9, 2010, Dr. Wilner moved to dismiss for lack of jurisdiction[2] (doc. 35). By order filed that same date, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On February 28, 2011, the defendants Norris and Truluck moved for summary judgment. By order filed that same date, pursuant to *Roseboro*, the plaintiff was again advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff responded by filing his own motion for summary judgment on April 5, 2011.

## **FACTS PRESENTED**

The plaintiff was transferred from Turbeville Correctional Institution ("TCI") to the Florence County Detention Center ("FCDC") on February 26, 2010, pending adjudication as a sexually violent predator. He was released from the custody of the South Carolina Department of Corrections ("SCDC") on July 16, 2010. He alleges that he was denied

---

[2]In his motion to dismiss, Dr. Wilner asserts that he was never served with process. Because he would have been entitled to summary judgment as set forth below, had he been served, it is recommended that he be dismissed from the case without further service of process or response. *See, e.g., Ali v. Corr. Med. Servs., Inc.*, C.A. No. DKC-09-0466, No. 2009 WL 2713948, at *1 n .1 (D.Md. Aug. 25, 2009).

proper medical attention while at the FCDC concerning "chronic pain in [his] chest nerves, and legs calf muscles"; "painful and bleeding bowel movements"; "gas...and bile acid"; and "poor circulation." He alleges that Dr. Wilner and Nurse Truluck deliberately denied him medications and were "intentionally trying to murder" him (comp. 10-12). In his motion for summary judgment, the plaintiff also alleges that while at the FCDC he developed "a fungal infection, a nasty rash" and that he was "scolded by burning hot water" from daily showers (pl. m.s.j. 10-14). He seeks compensatory and punitive damages and an award of costs.

The defendant Norris is the Administrator of the FCDC, and Nurse Truluck is a registered nurse and serves as the Director of Medical Services at FCDC. Dr. Wilner is a physician and serves in the capacity of an independent contractor as the Medical Director at the FCDC. Submitted along with Norris' and Nurse Truluck's motion for summary judgment are detailed FCDC medical records for the plaintiff. These defendants deny they were deliberately indifferent to the plaintiff's serious medical needs and point to the medical records to establish the care the plaintiff in fact received while at the FCDC.

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248

3

(1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

***Medical Indifference***

Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). The government is "obligat[ed] to provide medical care for those whom it is punishing by

4

incarceration." *Estelle v. Gamble,* 429 U.S. 97,102 (1976). This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104. As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach. *Id.* at 105-106.

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987). A medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." *Miltier v. Beorn*, 896 F.2d 848, 851-52 (4th Cir. 1990) (citation omitted). "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle*, 429 U.S. at 106. Mere negligence or malpractice does not violate the Eighth Amendment. *Id.* Moreover, disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

While the plaintiff clearly had significant medical needs while at the FCDC, he cannot honestly contend that the medical staff there was deliberately indifferent to them. As itemized in Nurse Truluck's affidavit (Truluck aff. ¶¶6-12) and detailed in the 208 pages

of medical records for the plaintiff during his 141 days in the facility, the FCDC medical staff was keenly aware of the plaintiff's medical complaints and provided him thorough care on a daily basis. The records reveal the following:

 (1) The plaintiff completed a medical questionnaire upon his arrival at FCDC;

 (2) he was given an initial medical assessment on March 1, 2010;

 (3) soon after his arrival, the FCDC medical staff made an urgent request and received the plaintiff's prior medical records from TCI;

 (4) his prior medications were reviewed and approved by Dr. Wilner;

 (5) in response to his medical complaints, he received around-the-clock attention, with checks by attendants being made as frequently as every 15 minutes;

 (6) he was administered prescription drugs and other medications (for which he signed) by the medical staff at regular intervals every day;

 (7) he prepared and submitted numerous medical request forms during his stay at FCDC, each appearing to have been processed and returned to the plaintiff with acknowledgments and instructions;

 (8) he was provided lab work on his stool sample in response to his complaints of bowel pain and discharge; and

 (9) he was sent for a consultation with a vascular surgeon just prior to his release from custody (def. m.s.j., ex. A-F).

The court has carefully reviewed all of the submitted medical records, including the inmate medical request forms containing the plaintiff's complaints. While the plaintiff may be personally dissatisfied with the care he received while at FCDC, he is not constitutionally entitled to the treatment of his choice. The records attest that the defendants were not indifferent to the plaintiff's serious medical needs.

Despite having the opportunity to respond to the defendants' motion for summary judgment and contest or challenge the medical records submitted, the plaintiff chose instead to file his own motion for summary judgment. The court notes that the plaintiff's motion was filed on April 5, 2011, nine months after his release from FCDC. In addition to rehashing the same medical indifference claims contained in his complaint, the plaintiff's motion adds allegations for the first time that he developed a fungal infection and a rash while at the FCDC and that he was scalded in the shower. With his motion he provides pictures purportedly showing these conditions. However, the plaintiff provides no evidence whatsoever to support his claim that he developed these conditions while at FCDC. Indeed, a review of the medical records reveals that he made no mention to the medical staff of these complaints. In any event, as these claims were not raised in his complaint, and only appeared in his motion for summary judgment, they are untimely and will not be considered. Based on the foregoing, the defendants are entitled to summary judgment, as there is no genuine issue of material fact regarding the care received by the plaintiff while at FCDC.

### *Administrator Norris*

The plaintiff makes no allegations against Administrator Norris regarding his medical care. To the extent he attempts to hold Administrator Norris liable in his supervisory capacity, the doctrine of *respondeat superior* generally is inapplicable to Section 1983 suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926, 928-29 (4th Cir. 1977). The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit

authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.). The plaintiff has failed to make such a showing here. *See Miltier*, 896 F.2d at 854 (to bring claim alleging denial of medical treatment against non-medical supervisory prison personnel, inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct). Based upon the foregoing, any claim against Administrator Norris fails.

### *Dr. Wilner*

In his motion to dismiss, Dr. Wilner asserts that he was never served with process. Because he would have been entitled to summary judgment, as set forth above, had he been served, it is recommended that he be dismissed from the case without further service of process or response. *See, e.g., Ali v. Corr. Med. Servs., Inc.*, C.A. No. DKC-09-0466, 2009 WL 2713948, at *1 n.1 (D.Md. Aug. 25, 2009).

### **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is

RECOMMENDED that the defendants' motion for summary judgment (doc. 58) be granted. Further, it is

RECOMMENDED that the plaintiff's motion for summary judgment (doc. 64) be denied. Further, it is

RECOMMENDED that Dr. Wilner's Motion to Dismiss (doc. 35) be granted.

April 13, 2011                                          s/Kevin F. McDonald
Greenville, South Carolina                    United States Magistrate Judge